```
1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
2

3    BASS,                            .
                                      .
4          Plaintiff,                 .
                                      .  Case No. 10-cv-01195
5    vs.                              .
                                      .  Newark, New Jersey
6    STATE POLICE, et al.,            .  June 2, 2011
                                      .
7          Defendants.                .
                                      .
8

9                       TRANSCRIPT OF HEARING
10                     Final Pretrial Conference
                   BEFORE THE HONORABLE PATTY SHWARTZ
11                  UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the              TERRY RIDLEY, ESQ.
     Plaintiff:           Hunt, Hamlin & Ridley
14                        60 Park Place, 16th Floor
                          Newark, NJ 07102
15                        (973) 242-4471

16                        KYANA WOOLRIDGE, ESQ.
                          Hunt, Hamlin & Ridley
17                        60 Park Place, 16th Floor
                          Newark, NJ 07102
18                        (973) 242-4471

19   For the Defendants:  VINCENT J. RIZZO, JR., ESQ.
                          Office of the NJ Attorney General
20                        RJ Hughes Justice Complex
                          25 Market Street
21                        PO Box 112
                          Trenton, NJ 08625-0112
22                        (609) 943-5265
                          Email:
23                        Vincent.rizzo@law.dol.lps.state.nj.us

24

25
```

```
 1                              CHRISTINE H. KIM, ESQ.
                                Office of the Attorney General
 2                              State of New Jersey
                                25 Market Street
 3                              P.O. Box 112
                                Trenton, NJ 08625
 4                              (609) 633-7786
                                Email:
 5                              Christine.kim@dol.lps.state.nj.us

 6   Audio Operator:

 7   Transcription Service:     KING TRANSCRIPTION SERVICES
                                901 Route 23 South, Center Ste. 3
 8                              Pompton Plains, NJ 07444
                                (973) 237-6080
 9
     Proceedings recorded by electronic sound recording
10   (transcriber's note:  Microphones for the Court and the
     plaintiff's attorney did not function properly); transcript
11   produced by transcription service.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (Commencement of proceedings at 11:36 A.M.)

2

3              THE COURT:  Thanks, everybody.  We're here on the

4    record for the final pretrial conference in Bass versus New

5    Jersey State Police, et al., Civil No. 10-1195.

6              May I have appearance for the plaintiff, please.

7              MR. RIDLEY:  May it please the Court, good morning,

8    Your Honor.

9              THE COURT:  Good morning.

10             MR. RIDLEY:  Terry Ridley from the law firm of

11   Hunt, Hamlin & Ridley on behalf of Allen Bass.  Joining me is

12   my associate Kyana Woolridge.

13             THE COURT:  Okay.  Thank you.

14             On behalf of defendants.

15             MR. RIZZO:  Vincent J. Rizzo Junior, deputy

16   attorney general on behalf of the State defendants,

17   individual and organizational.

18             MS. KIM:  Good morning, Your Honor.  Christine Kim,

19   deputy attorney general on behalf of the New Jersey State

20   Police.

21             THE COURT:  Okay.  Thanks.

22             I don't think we have done a final pretrial

23   conference together, so let me just run through how we'll

24   proceed today.  I've had a chance to review the entire order.

25   I have some comments or questions based upon what I received.

1    You can remain seated during this proceeding, if you want,

2    because we may be going and back and forth in the order, so

3    it might just be more comfortable, but if you choose to rise,

4    that's certainly your prerogative.

5            So if everybody has a copy of the pretrial order in

6    front of them, that would be great.

7            The second thing the Court did receive is the

8    June 1st letter.  I'm hoping that the parties have discussed

9    the contents of this letter, because it seems like it is the

10   kind of thing that you could probably resolve, but we'll --

11   we'll address that at the appropriate time.

12           I had also requested copies of the expert reports.

13   There was one expert report contained in the version of the

14   order submitted to the Court, but I didn't get the other one.

15           So do you have the expert reports?

16           MR. RIZZO:  Yes, Judge, we have the two copies of

17   our three expert reports.

18           THE COURT:  Okay.  Great.  If you could hand those

19   up.  And then I do have a question when we get to the expert

20   section about those.  So I will take those from you.  So

21   thank you.

22           Excellent.  Many thanks.

23           Okay.  If I could direct everyone's attention,

24   then, to -- it's page 3 of the pretrial -- final pretrial

25   order, this is a section of the pretrial order that addresses

1   dispositive and in limine motions.  There's a couple of

2   things I'd like to talk with you about to -- of course, is

3   first, there seems to be a desire to file motions by both

4   parties for summary judgment.  So I would like to set dates

5   to do that with you today.

6           The second thing I would like to talk with you

7   about as it relates to this section is the in limine motions.

8   In working with Judge Hayden, my responsibility, of course,

9   is to resolve any in limine motions that are more like

10  discovery than really evidentiary.  The second thing I'd like

11  to try to do for Her Honor is to see if there's any way that

12  we can streamline the motions.  I don't know if this is that

13  sort of case, but there are some cases where a cautious

14  lawyer would want to make -- preserve a motion in limine to

15  bar a certain piece of evidence from -- and then the other

16  side really has no intention to offer it, so we don't need to

17  brief it.  So I don't know if we have such things here, but

18  let's take these one at a time.

19          First, with respect to the motions for summary

20  judgment, I know that defendant had discussed that with the

21  Court.  I did not know until I saw the pretrial order that

22  the plaintiff also intends to file a motion for summary

23  judgment.

24          Does that mean that each side is saying there are

25  no disputed issues of fact or liability?

1           MR. RIZZO:  I didn't catch the end of your

2    question, Judge.

3           THE COURT:  Fine.  I asked -- I said if people are

4    filing cross-motions for summary judgment in a civil rights

5    case, does that mean there's no disputed issues of fact or

6    liability?  I'm surprised.  So you can surprise me; that's

7    good.

8           What --

9           MR. RIDLEY:  Well, certainly we take the position

10   that there's no issue as in liability.  I put that in there,

11   Your Honor, because after my review of the facts, I think

12   it's pretty straightforward that there was abuse of the civil

13   rights statute by these defendants.  One of the defendants

14   was actually disciplined for his conduct in this, so I just

15   thought it was something that I would to throw in, knowing

16   that these types of motions, at least on plaintiff's side,

17   are rarely -- are rarely granted, but I put that in --

18          THE COURT:  They're also rarely -- they're also

19   rarely filed, but that's okay.

20          MR. RIDLEY:  They're also rarely filed.

21          THE COURT:  Okay.

22          MR. RIDLEY:  So I had -- I have two things against

23   me.  They're rarely filed, and then when they are filed, it's

24   very rare when they carry the day.  But I just wanted to

25   cover myself just in case that as I'm going through the file,

 1    then I really think that this is a dispositive motion.

 2    Certainly, I don't want to make more work for myself.  And if

 3    I find that it's not something that's really relevant, then I

 4    won't file it.

 5             THE COURT:  Okay.

 6             MR. RIDLEY:  I won't file it.

 7             THE COURT:  Okay.  Well, we'll set dates to do

 8    that.  If I could direct your attention -- I just want to

 9    focus on the dispositive motions first -- page 4, the

10    second -- the section that says defendants' motion for

11    summary judgment.  My goal here is to see if we can narrow

12    down any of the issues.  And the ones that at least I -- that

13    caught my attention was the Eleventh Amendment immunity

14    issue, the official capacity issue, and the Title 59 issue.

15    I don't know if there's any way we can narrow these, so let's

16    just talk about the Eleventh Amendment issue.

17             Is it -- is it the position of the defendants that

18    the State Police entity is akin to the State of New Jersey

19    and therefore entitled to Eleventh Amendment protection?  Is

20    that what the defendants' view is?

21             MR. RIZZO:  Yes, Judge, it would be the Eleventh

22    Amendment, state's immune from -- state and individuals in

23    their official capacity are immune from suit under the

24    Eleventh Amendment because they're not persons under 1983.

25             THE COURT:  So the State Police as an entity --

 1              MR. RIZZO:  As an entity, correct.  And the

 2    troopers in their official capacity.

 3              THE COURT:  Okay.  Let me ask the plaintiff, do you

 4    have a -- I'm trying to streamline your motion practice.  Do

 5    you have a view on that subject?

 6              MR. RIDLEY:  What was that, Judge?  I'm sorry.

 7              THE COURT:  I'm asking if you have a view on

 8    whether or not the official capacity claims and the State

 9    Police claims are barred by the Eleventh Amendment.

10              MR. RIDLEY:  Your Honor, I'm not -- I have had some

11    cases not against the State Police, but against the

12    appropriate authority in which our claims were barred by the

13    Eleventh Amendment.  So I understand as far as that goes.

14              But I'm not so certain about the State Police in

15    this regard.  And I would have to really brief the issue to

16    be certain of that.  But certainly, if I brief the issue and

17    I explore the issue, I will -- that claim.

18              THE COURT:  Okay.

19              MR. RIDLEY:  But as it stands today.

20              THE COURT:  Okay.  Let me ask a little bit about

21    the Title 59 immunities.  This question really goes to the

22    defense.  Can you explain a little bit about what this is?

23    It's not a true -- it's not a failure to file a tort claim is

24    it?  Or it is --

25              MR. RIZZO:  No, no --

 1                MR. RIDLEY:  What is this?

 2                MR. RIZZO:  It has to do with Section 9.92 of the

 3    Tort Claims Act, the New Jersey Tort Claims Act, which allows

 4    for a recovery of pain and suffering under certain conditions

 5    that have to be met -- threshold conditions.  Number one, the

 6    expenditure of at least $3600 in medical fees either at the

 7    time or into the future.  And in addition to that, it's got

 8    to encompass or have as part of the injury, permanent loss of

 9    a bodily function.  Without that explicit determination,

10    there can be no recovery under Title 59 -- this is separate

11    from anything under 1983 -- for pain and suffering associated

12    with any kind of tortious activity that may be found, say, by

13    a jury on the part of the defendants.

14                THE COURT:  So the -- if the judge were to grant

15    that motion, it would only eliminate the state common law

16    claims?

17                MR. RIZZO:  Correct.

18                THE COURT:  I got it.

19                Let me hear from the plaintiff, if I could, on this

20    subject.  Do you think there's evidence in the record that

21    would show the permanent loss of a bodily function?

22                MR. RIDLEY:  Yes, Your Honor, I think there's

23    substantial evidence in the record.  He suffered from a

24    permanent -- from a orbital fracture around the -- so

25    apparently, there's some loss of vision.  He also suffered

 1   from some -- because he was beat upon the head, he complains

 2   of headaches, pain like that.  So I think it may be a close

 3   call on his cases, but -- and this could go on -- I think we

 4   will carry the day on the threshold issue.

 5           THE COURT:  Okay.  All right.  Thank you.

 6           Again, my purpose in going through this is just to

 7   see if we can streamline any of the motions.  It sounds like

 8   at least at this point on the substantive motions, we cannot.

 9           So let's talk about a briefing schedule for the

10   summary judgment motions.  What do you folks have in mind?  I

11   can work backwards from a return date, if that's what you

12   would prefer.  By way of example, if you wanted a return date

13   of July 18th, say, we would end up filing these motions

14   sometime -- I'd have to count it backwards, like the second

15   or third week of June.

16           If we end up going past that, we're --

17               (Simultaneous conversation)

18           MR. RIZZO:  That's kind of quick, Judge.

19           THE COURT:  I know.  I know -- that's why I --

20   that's why I thought I would start backwards under this

21   scenario, because the next return date will be August 1st.

22   And I know -- and I'd ask counsel to speak up if you have

23   vacation or other personal obligations that would interfere

24   with motion practice, so that the deadlines we set, we know

25   we can make without having to ask for further adjustments.

 1              MR. RIZZO:  Well, on my behalf, Judge, I've got a

 2    couple of medical issues that are dangling.  I'm going for an

 3    MRI on Tuesday to determine whether or not I'm going to need

 4    surgery on my back for something.  And I've also got a disk

 5    problem that I'm going this afternoon for.  So I don't know

 6    if I'm going to be -- and I've got a trial scheduled for

 7    June 27th.  So I'd prefer to have the return date of the one

 8    you said in August --

 9              THE COURT:  Like an August 1st date?

10              MR. RIZZO:  Just to make that I'm not going to be

11    under the knife or recuperating or something like that.

12              THE COURT:  I hope not.  Okay.

13              Counsel, what do you think?

14              MR. RIDLEY:  Well, is August 1st the only date we

15    have in August?

16              THE COURT:  No, August 15th would be the other

17    return date.

18              This is what I'm going to do.  I'm going to -- give

19    me a second.  I'm just going to tell you what the motion

20    practice cycle would look like, and then based upon that, you

21    guys can tell me, because we'd end up obviously having some

22    obligations in July.

23              So just give me one second.

24                        (Pause in proceedings)

25              THE COURT:  Okay.  If you were going to make

1    August 1st the return date, the "file by" date would be

2    July 8th.

3              If you were going to make August 15 the return

4    date, the "file by" date would be July 22d.

5              Those assume nobody invokes the automatic

6    extension, which would bounce either the 1st to the 15th or

7    the 15th into September.

8              So what's your pleasure?

9              MR. RIDLEY:  My pleasure would be the 15th,

10   Your Honor.

11             THE COURT:  Okay.  So the "file by" date of

12   July 22d?

13             MR. RIDLEY:  Yes.

14             THE COURT:  Okay.

15             MR. RIZZO:  That's fine with me too.

16             THE COURT:  Okay.  Then just for benefit of the

17   record, the motions for summary judgment to be filed by

18   July 22d.  Assuming no one invokes the automatic extension

19   under the local rules, the opposition would be due

20   August 1st; the reply August 8th; and the return date would

21   be August 15.  And Judge Hayden will let you know if she

22   would like to have argument.  So you should not assume that's

23   going to be an argument date.  Her Honor will give you a

24   certain date, if she wants argument.

25             Okay.  The next thing I'd like to do is I'd like

1  to --

2          MR. RIZZO:  Your Honor, before we proceed, because

3  Mr. Ridley indicated he wasn't sure about the Eleventh

4  Amendment and the 1983 persons thing, he wanted to research

5  it, if he can give me by a certain date whether or not I'm

6  going to need to even do those for my -- my part rather than,

7  you know, wait until the last minute or hanging out.  I don't

8  want to put you under pressure, but just to kind of

9  streamline what I've got to do.

10          MR. RIDLEY:  You just did.

11          MR. RIZZO:  Well, I mean, if you let me know by

12  July 1st whether or not you're going to -- is that enough

13  time?

14          MR. RIDLEY:  What did he say?  July 22d, you better

15  give me another week.  That's the holidays coming up.

16          MR. RIZZO:  Well, that's before the holiday.

17          MR. RIDLEY:  Yeah, but --

18          MR. RIZZO:  So this way I can go away on a holiday.

19          MR. RIDLEY:  I have -- not to talk about what my

20  schedule is going to be for the next two months, but --

21          MR. RIZZO:  All right.  So what --

22          MR. RIDLEY:  -- got three trials listed --

23          MR. RIZZO:  The 2d?

24          MR. RIDLEY:  -- and a Third Circuit argument.

25          MR. RIZZO:  July 7th?

```
 1            MR. RIDLEY:  -- in July.

 2            July 7, I think is my Third Circuit argument.

 3            MR. RIZZO:  July 8th.

 4            MR. RIDLEY:  So maybe like around the 11th?

 5            YOUR HONOR:  Well, they're trying to avoid having

 6  to write the -- write -- write to brief points that they

 7  believe is the --

 8            MR. RIZZO:  Judge, that's okay --

 9            THE COURT:  -- right?

10            MR. RIZZO:  -- because they're -- I could --

11  they're canned, and we've done them a million times, it's

12  just putting the names in.

13            THE COURT:  All right.

14            MR. RIZZO:  All right.  It doesn't make any

15  difference.

16            THE COURT:  July 11th, then, the plaintiff should

17  notify the defendants if he intends to oppose the motions

18  based upon the Eleventh Amendment and official capacity.

19            Okay.  The next issues I'd like to talk to you

20  about are the in limine motions.  I had a few questions, and

21  we said I'm not resolving these in limine motions, but I'm

22  trying to streamline them.  And one that caught my

23  attention -- we're on page 3 -- it's the third in limine

24  motion listed by the plaintiff, and it reads:  Plaintiff is

25  seeking to bar any testimony regarding comments allegedly
```

 1    made by plaintiff at the time of arrest and receiving medical

 2    treatment.

 3           And my question is how would the defendant be

 4    barred from offering statements of a party opponent under the

 5    evidence rules?

 6           MR. RIDLEY:  He wouldn't be barred, Your Honor.

 7    That's -- that's something that --

 8           THE COURT:  So can I said -- can I note that's

 9    withdrawn?

10           MR. RIDLEY:  Yes.

11           THE COURT:  Okay.

12           This is just to refresh my recollection, with

13    respect to the next two, one is to preclude testimony about

14    allegations he allegedly committed resisting arrest and

15    eluding.

16           Was there a conviction -- was there a criminal case

17    that was connected to this?

18           MR. RIDLEY:  Well, that's why we put that in there.

19    There was a criminal case attached to this.  Our client went

20    to court a number of times, and the case was dismissed.

21           THE COURT:  Okay.

22           MR. RIDLEY:  So that's why we included that.

23           THE COURT:  I see.  Okay.

24           Well, I think this is a question I have for the

25    defendants.  It's the next-to-last entry on page 3.  The

1    proposed motion is to bar any testimony regarding any prior

2    medical treatment plaintiff received which is unrelated to

3    the allegations in the complaint.

4              Is the defendant intending on offering such

5    evidence?

6              MR. RIZZO:  Not as direct evidence of any injury in

7    this case.  But in terms of credibility, because of things

8    that he said at his various IMEs to the three different

9    doctors that examined him for the defendants.

10             THE COURT:  Okay.  I understand.  Again, I'm not

11   here to rule on whether it's in or out; just to see if

12   there's any way to resolve it.

13             And I understand, then, the next in limine

14   application to preclude evidence concerning substance abuse,

15   the defendants, if they choose to -- offer that on

16   credibility, challenge credibility, and like that.  Correct?

17             MR. RIZZO:  Yes.

18             THE COURT:  The next issue -- I'm on page 4 now,

19   it's the following:  Plaintiff seeks to reveal the identity

20   of the person involved in the incident dated September 14,

21   2007, pursuant to Incident Number B 010-2007-00002799.  This

22   sounds like a discovery issue.  I'm not sure what it is.  I'm

23   not even sure what this -- what you're looking for.

24             So why don't you tell me what you understand the --

25   and this is a question for plaintiff -- what is the incident

 1   that you're referring to?

 2        MR. RIDLEY:  The incident we're referring to,

 3   Your Honor, is the incident involving Allen Bass.  Evidently,

 4   there was someone who gave some information that was

 5   unidentified in the discovery regarding the incident.  And we

 6   just want to name of that person revealed, so we can possibly

 7   put them under subpoena and --

 8        THE COURT:  What issue -- what efforts did you make

 9   during the course of discovery to try to obtain this

10   information?  Because this really sounds more like a

11   discovery issue.

12        MR. RIDLEY:  It does sound like a discovery issue,

13   Your Honor, and I'm not fully cognizant of what this issue.

14   I don't have my partner Ray Hamlin here, who actually was

15   dealing with this issue.  So I'm just going on based on what

16   he was telling me.  But evidently, there's some unknown

17   person.  And it is a discovery issue, Your Honor.  But it was

18   never revealed to us in discovery, that name.

19        I won't represent that it was a request made to

20   reveal that during the discovery period, because I don't

21   know.  But certainly -- I mean that's -- that's an in limine

22   motion that I don't want withdrawn, but at least if I can

23   take another look at it.

24        THE COURT:  Well, that would be one also that I

25   would resolve because it's a discovery dispute, and I do

 1   resolve all discovery disputes during this conference so that
 2   we're done with discovery.
 3           Let me just hear from your adversary, if they can
 4   make an offer of proof concerning this subject.  Have you
 5   been requested this or anything?
 6           MR. RIZZO:  To be absolutely, Judge, I'm not
 7   exactly certain what it is he's after, because this is not
 8   the incident that forms the basis of this lawsuit.  This is
 9   something that happened approximately a year before.  And if
10   it's something that was contained in like an internal or a
11   personnel file, we turned everything over to them.  And as
12   far as I know, there was never any request for whoever this
13   unidentified person is that allegedly has whatever
14   information that they're after.  Because certainly, if -- if
15   that had been requested and we felt that it was not
16   permissible to produce, we would have objected.  There would
17   have been a motion.
18           There never has been.
19           This to me is something that's raised very late in
20   the game and, really, is not even relevant to what's going on
21   in this particular incident.
22           MR. RIDLEY:  Your Honor, I think he refreshed my
23   recollect as to what this was all about.  And I believe the
24   officer who was involved in the Allen Bass case, received a
25   disciplinary action for his conduct with respect to Allen

1   Bass.  I think the year before this, he also received some

2   discipline action, and I think there was a person that was

3   unidentified that had did the investigation.  So I think

4   that's what it is.

5           But once again, Your Honor, recognizing it's a

6   discovery motion, whatever your practice is, if you want me

7   to write a letter to you and he responds and we --

8                   (Simultaneous conversation)

9           THE COURT:  It's really too late, to be perfectly

10  honest with you.  The discovery -- any discovery disputes

11  were to have been brought to the Court's attention consistent

12  with the deadline set in the pretrial scheduling order.  And

13  I haven't heard any reason why that -- it wasn't more

14  promptly brought to the Court's attention.

15          The disclosure of prior events involving the

16  defendants in this case, it's whether there were prior events

17  and how, for Monell purposes, the entity responded.  Who was

18  involved in it is kind of beside the point, because for

19  Monell purposes, you're looking to demonstrate that there's a

20  pattern or practice of certain types of behavior that's

21  either been condoned explicitly or by custom and practice

22  implicitly.

23          So it's sort of not surprising that someone would

24  not have sought to identify a person involved in one of these

25  prior events because they're not -- that -- who was involved

 1   is not really relevant.  It's how the entity, the institution

 2   responded.

 3            And so for those reasons, I have not heard that

 4   this was brought to the Court's attention by the discovery

 5   dispute deadline, which is long past.  Nor am I really

 6   persuaded that the inability to gain this information, even

 7   if it's been timely requested, has impacted your ability to

 8   use this information for the purpose for which it was

 9   appropriately disclosed to you, which is really Monell.  So

10   for those reasons, the Court's going to deny the application

11   as being untimely.

12            And now I'd like to move to the next issue, which

13   is barring introduction of the proposed -- a proposed field

14   test.  I guess my question is, Was there a field test?

15   Because it's got the word "proposed field testing," so...

16            MR. RIZZO:  Yes, Judge, in the arrest report, which

17   is part of the documents we turned over to the plaintiff, at

18   the time the arrest was made, the vials that were secured

19   from Mr. Bass that he had thrown on the ground were

20   field-tested at the scene and turned out to be positive for

21   crack cocaine.

22            THE COURT:  Okay.  So there's actually a field

23   test, but -- so you're looking to keep out the fruits of it?

24            MR. RIDLEY:  Yes, Your Honor, because of the -- the

25   alleged throwing of these vials by my client and then the

1   field test, in and of itself, is not evidentiary.  And we

2   were -- talked at the time about a criminal case, and you

3   can't go to the jury -- you can't go before a judge and say,

4   hey, Judge, I got this field test and that's evidential on

5   the issue of whether or not this is cocaine or heroin or

6   whatever.  Those field tests have been known to be -- have

7   been invalidated on countless occasions.  What you need is a

8   lab report.

9        And there was no lab test done in this particular

10  case.

11       So our position is that that information, plus the

12  fact that that the charge was dismissed against him, that --

13  that testimony should be barred.

14       THE COURT:  Okay.  I understand your position.

15       I'm just going to -- in the version of the pretrial

16  order, I'm going to just omit the word "proposed," because

17  it, in fact, occurred -- can't keep it out.  I got it.

18       Okay.  I'd like to now turn to the in limine

19  applications identified by the defendants and the ones that

20  I'd like to ask you about are G, H, and I.  The first is to

21  exclude expert opinion from a psychologist or an

22  ophthalmologist, I assume what's what you meant to say.  The

23  plaintiff as I understand it, has one expert.  And I don't

24  know that he's going to be testifying on those subjects.

25       MR. RIZZO:  Well, in his deposition last week, he

 1    testified, he told me he did no testing and has no opinion

 2    and is not qualified to offer an opinion in neither one of

 3    those fields.

 4              THE COURT:  Okay.  Let me ask the plaintiff:  Are

 5    you intending on offering testimony on that subject?  Is that

 6    "no"?  On behalf of the plaintiff?

 7              MR. RIDLEY:  I have to take a look at our expert

 8    report, Judge.

 9              THE COURT:  All right.  Take your time.

10                       (Pause in proceedings)

11              MR. RIDLEY:  Your Honor, I'm looking at his

12    curriculum vitae.

13              THE COURT:  Okay.

14              MR. RIDLEY:  I mean, he's actually a general

15    surgeon, our expert.  And certainly as a surgeon, he can't

16    give any testimony with respect to any psychiatric claims as

17    an expert.  So certainly I agree with that point.

18              But the ophthalmology issue is kind of a little bit

19    different because he's indicated that it is -- that there's a

20    need for surgery.  So while his phrase may be different --

21    maybe it's not phrased properly, but, however, he needs to

22    go --

23                    (Interruption in proceedings)

24              MR. RIDLEY:  -- on and testify that this person has

25    a permanent injury with respect to the orbital fracture.

1   There was some problems with the muscle and that he was in

2   need of surge- -- he recommends surgery.  So I think that's

3   going to be the four corners of his testimony.  So...

4           THE COURT:  So is he -- so is he going to talk

5   about issues of ophthalmology?  Is he going to talk about

6   vision problems?

7           MR. RIDLEY:  Well, I think he's going to talk about

8   just the effect of the orbital fracture and what needs to be

9   done.

10          THE COURT:  I see.

11          MR. RIDLEY:  And I think that's what he's going to

12  testify to.  So certainly, he's not going to testify as an

13  expert in the field of ophthalmology and say that he was

14  totally blind.  But he certainly will testify to the effect

15  of the fracture, which I think he's quantified to do so, and

16  the need for surgery.

17          THE COURT:  Okay.  Let me ask your adversary, with

18  those representations, does that avoid the need to file an

19  application on the issue of ophthalmology?

20          MR. RIZZO:  Well, if that's the position plaintiff

21  is going to take, absolutely not, because it's clear that the

22  doctor mentioned, first of all, nothing about surgery in his

23  report, nothing about surgery in his opinion.  And he was

24  very clear to me, that he didn't even do any kind of testing

25  to determine whether or not there was even a vision problem

1    that requires any kind of surgery.  In fact, his testimony

2    was the fracture was healed, and when you looked at the man,

3    you could see no deformity or no problem with his eye

4    whatsoever.

5           So if plaintiff's going to take that position,

6    then, fine, I'll go through the exercise of writing it all up

7    and attaching the relevant portions of the deposition.

8           MR. RIDLEY:  Well, Your Honor --

9           THE COURT:  But that's a different -- just one

10   second, I'll let you reply.  But that's a little different

11   than opposing -- I'm sorry -- and --

12          MR. RIZZO:  Well, he -- okay, I'll narrow it even

13   further, Judge.  He told me he has no opinion in regard to

14   either the psych or the ophthalmology and he's not qualified

15   to give that opinion.

16          THE COURT:  Because -- and so that's one issue.

17   But then, I understood that you were responding to your

18   adversary as if you were going to make an application that

19   was slightly different than this one as written.  Because

20   this one says I'm precluded -- you want to preclude testimony

21   on psych and ophthalm- -- ophthalmology.

22          MR. RIZZO:  Right.

23          THE COURT:  And your adversary said he expects the

24   witness to testify about expected surgery to deal with the

25   orbital fracture and some muscle issues that affect the eye.

1   That's what I'm inferring.

2           So you responded to that saying, wait a minute, he

3   didn't -- that's not in his report.  So it's a little bit of

4   a different application.  So that's all.

5           MR. RIZZO:  Okay.  But -- all right.  Just to focus

6   on mine, the doctor said he's not qualified to give an

7   expert -- to give an opinion on ophthalmology.  And he has no

8   opinion on it.

9           As far as the surgery goes, if we're going to deal

10  with that issue, there's nothing in his report that says

11  that.  And there's nothing in his deposition that I asked him

12  about where he said surgery was needed.  In fact, he said

13  there was nothing he could determine was wrong with the eye.

14  So on either count, I would prefer to have the in limine

15  motion, if plaintiff is going to take the position that he's

16  taking, that he just expressed to the Court.

17          MR. RIDLEY:  Your Honor, but what he's doing is

18  mixing his apples with my oranges.  Because what -- what he's

19  actually talking about is part of a deposition that he took,

20  when I have the doctor's report, which indicates that the

21  doctor looked at internal medical records.  So he has a right

22  to rely on those records and make -- to come to his opinion

23  on permanency.  Mr. Rizzo is saying, no, he doesn't at this

24  time, just because I took the deposition, and I say, oh, do

25  you know anything about psychiatry?  No, I'm -- I haven't

1    given an opinion of that.  I mean, certainly, those issues

2    are credibility issues for the experts.  And I think they go

3    to the jury.  I mean, if he wants to file a motion in limine,

4    we'll respond to it.

5            THE COURT:  And are you also -- let me just make

6    sure, then.  It sounds like the expert is not going to offer

7    an opinion on psychology or psychiatric issues; correct?

8            MR. RIDLEY:  No.

9            THE COURT:  Okay.  You are saying you want to

10   use -- he may offer opinions that could be -- on

11   ophthalmology but not exactly?

12           MR. RIDLEY:  Yeah, it's not really.  He's talking

13   about the fracture, because he's reading in the medical

14   records.  So he's interpreting the medical records.  That's

15   what he's doing.

16           THE COURT:  So he's not going to offer an opinion

17   on ophthalmology as that term is used, in terms of vision

18   ability to see.

19           MR. RIDLEY:  No.

20           THE COURT:  Okay.  He is going to offer an opinion,

21   from your point of view, about the need for future surgery

22   and the muscle issue.

23           MR. RIDLEY:  And the permanency of the injury.

24           THE COURT:  Okay.  The defendant is seeking to

25   preclude that because it's --

```
1              MR. RIZZO:  Absolutely, Judge.

2              THE COURT:  Okay.  So I just want to write the

3   actual application, which I understand to be -- from the

4   defendants' point of view, to exclude plaintiff's expert from

5   testifying about the need for surgery.

6              Anything else?

7              MR. RIZZO:  Well --

8              THE COURT:  And permanency?

9              MR. RIZZO:  -- if any -- yeah.  Permanency.  Yeah.

10  As it regards that particular injury.

11             And I didn't hear from Mr. Ridley that he's giving

12  up entirely on any kind of ophthalmological opinion from

13  Dr. Procorney [phonetic], his expert.  Because I -- I'll

14  include that as a motion too.  I just don't want to leave

15  anything out that I covered in the deposition, which I

16  thought kind tied up neatly, only the fields that the doctor

17  was going to offer an opinion on.

18             THE COURT:  All right.  Let me hear from

19  plaintiff's counsel.

20             MR. RIDLEY:  Well, he doesn't have -- he doesn't

21  say he has expertise in that field of ophthalmology, so

22  certainly, he's not going to give an opinion --

23             THE COURT:  Okay.

24             MR. RIDLEY:  -- as to that.  He's a general

25  surgeon.  So that's what he's going to give opinion about.
```

 1   Something related to his field of expertise.

 2              THE COURT:  Okay.

 3              MR. RIDLEY:  So I don't think that's really an

 4   issue.

 5              THE COURT:  Okay.

 6              MR. RIZZO:  Okay.

 7              THE COURT:  Good.  The next issue I'm going to talk

 8   about is excluding testimony evidence regarding loss of

 9   income slash wages.  Is the plaintiff intending to offer

10   evidence on that subject?

11              MR. RIDLEY:  My understanding that we are try- --

12   going to offer evidence on that subject.  I know the

13   defendant is taking the position that he was unemployed at

14   some point in time.  Our position is that he was gainfully

15   looking for work and was in a position to find work but for

16   these injuries and but for his eight days of incarceration

17   and the subsequent injuries that he had to get treated for.

18   So during --

19              THE COURT:  How -- I'm sorry.

20              MR. RIDLEY:  So during that course of time, he lost

21   out on job opportunities.

22              THE COURT:  How do you calc- -- how -- what kind of

23   evidence are you going to have, what kind of numbers for the

24   jury, they're using to do their arithmetic to figure out the

25   value of that?

 1            MR. RIDLEY:  I believe that we have some -- you

 2   know, I'm -- with some of these things, Your Honor.  Because

 3   I'm going through them.  But I know there was some testimony

 4   as to what his prior employment was and how much he was

 5   receiving.  And it wasn't much.  This was -- this is not a

 6   person who was a high-wage earner.  He was basically a

 7   laborer.  So certainly, we're going to offer the testimony as

 8   to the last time he worked, because there seems to be a

 9   factual dispute as to the last time he was employed.  Their

10   position is he wasn't employed at all for a number of years.

11   Our client indicates he was employed for some period of time,

12   maybe off and on.  So the numbers that we'll be using would

13   be from his last employment and the jobs that he was going

14   for, how much those jobs were worth.

15            THE COURT:  Was discovery provided to -- so someone

16   would know what that -- the metes and bounds of that would

17   be?

18            MR. RIDLEY:  I believe so, Your Honor.

19            THE COURT:  Okay.  Let me hear from the defendants.

20   What's your basis for seeking to preclude evidence of lost

21   income and wages?

22            MR. RIZZO:  The basis is one of the plaintiff's

23   response to a discovery request where he says there will be

24   no claim for economic damages.

25            THE COURT:  Oh.

1          MR. RIZZO:  That's a little more solid than all the

2     rest of the...

3          THE COURT:  Okay.  Well, I'll give you a chance to

4     take a look at that, just in case -- if that's the case, then

5     you should advise your adversary by July 11 if -- how he's

6     going to be permitted to offer such evidence in light of this

7     interrogatory response.

8          Okay.  I looked at the other in limine applications

9     that you each of you have preserved for your respective

10    clients, and don't see any others that I might be able to

11    help mediate or resolve today.  But if you think there's ones

12    that would warrant further discussion on the record, please

13    bring them to my attention, so if you could look and go

14    through -- and your adversary's and if there are others you'd

15    like to discuss, I'm glad to deal with that.

16                    (Pause in proceedings)

17          MR. RIDLEY:  I'm curious about Number L that he

18    has -- that the defense has, that they want to bar plaintiff

19    from introducing evidence that the defendant -- one of the

20    defendants failed to appear in municipal court at the

21    plaintiff's -- at the plaintiff's trial on the charge against

22    him on alleged possession of narcotics.  And it seems to me,

23    that's what this case is all about.  So to have a motion in

24    limine to bar the fact that this guy didn't show up, that's

25    part of the false arrest and malicious prosecution and the

1    bad faith.  So certainly, for -- as to a motion in limine, I

2    think that's an improper motion, because that's really

3    evidential.

4             THE COURT:  Okay.  Let me hear your adversary.

5             Why is it that you're looking to preclude both the

6    evidence and arguments to be drawn from that evidence, which

7    is L and M on page 5?

8             MR. RIZZO:  That particular motion or those

9    particular motions really tie into the motion we intend to

10   bring, which we listed earlier, about whether or not

11   plaintiff's dismissal is sufficient to meet the standard of a

12   successful resolution on his part that's necessary to raise

13   the issue of a recovery for false arrest or malicious

14   prosecution or whatever.  There's law that says particular

15   types of dismissals, such as administrative, are not

16   favorable dispositions.  They're neutral.  They carry no --

17   no particular connotation to them.  And the fact that this

18   may have been dismissed for administrative reasons, if, in

19   fact, we are successful on that, then it may not be necessary

20   to do that, or it may be, depending.  It depends on -- on

21   other motions that we're having --

22            THE COURT:  You're talking about the --

23            MR. RIZZO:  -- see --

24            THE COURT:  -- dispositive motions.

25            MR. RIZZO:  Yes.

 1          THE COURT:  Let's assume you lose the dispositive

 2   motions.  There's an issue of fact.  The judge says, I'm

 3   sending this to the jury.  What's going to be -- because the

 4   in limine motions, Her Honor will give you deadlines to file

 5   at some point in future.

 6          Let's -- what's your evidence, what's your basis

 7   for precluding the admissibility, that's all causes of action

 8   in the case?

 9          MR. RIZZO:  Because the fact that the trooper may

10   not have shown up to court on the day of the trial, what

11   plaintiff intends to do with that is to turn that into

12   evidence of a false arrest, intentional -- knowing that there

13   was not evidence to support the arrest, knowing that there

14   was never the intent to prosecute, which to me is purely

15   speculative and nothing that should go to the jury simply on

16   the basis that he did not appear in court on the day of the

17   prosecution.

18          THE COURT:  Well --

19          MR. RIZZO:  There's no expert testimony to that

20   effect.  There is nothing but the plaintiff's own speculation

21   that this forms part of a conspiracy or is evidence of

22   knowledge that -- that all of this was a trumped-up charge,

23   made up -- made-up set of facts by the troopers.

24          THE COURT:  But I take it this trooper is going to

25   testify and someone may elicit from him if the subject is

 1   permitted to go into, like, what happened at court and why

 2   you didn't appear, and then the jury will have his testimony

 3   and the adversary -- your adversary will cross-examine him,

 4   assuming the subject matter is deemed to be relevant.

 5            MR. RIZZO:  I don't intend to raise it.  I would

 6   not raise it.

 7            THE COURT:  Right.  But from your point -- your

 8   first issue is this is irrelevant as to what happened in the

 9   court proceedings.

10            MR. RIZZO:  Absolutely.  Absolutely.

11            THE COURT:  Your adversary's view is the --

12   resulted in a dismissal and it is a predicate for the

13   malicious prosecution claim, so -- so all that's coming in in

14   terms of the fact there was a dismissal, and so you have a

15   relevancy argument.  I take it you also have a 403 argument,

16   because you're saying that it could be misused potentially

17   and cause confusion --

18            MR. RIZZO:  And prejudice.

19            THE COURT:  Okay.  I don't think I'll be able to

20   resolve this one.  Judge Hayden, I know, will do a great job

21   trying to resolve it.

22            So...

23            MR. RIDLEY:  Well, Judge, I think it can be solved.

24   I think this is --

25            THE COURT:  You know, I wish that I could resolve

1    it.  I just -- she hasn't delegated me the evidentiary calls.

2           MR. RIDLEY:  Okay.

3           THE COURT:  Someday she may, but today she hasn't.

4           So I understand your position.  And --

5           MR. RIDLEY:  Look, I just -- Your Honor -- and I

6    don't want to belabor it, because Your Honor just make

7    ruling, but, you know, I'm -- I'm a little surprised that he

8    indicated that this is administrative.  This may be an

9    administrative action.  This was -- in municipal court.  And

10   the fact of the matter is if the trooper showed up and got a

11   guilty, our client was found guilty, then I'll be on -- they

12   will be jumping up and down saying, oh, no, no.  All these

13   proceedings are relevant, we even had a trial, he was found

14   guilty, let's go, let's go, let's go.

15          Now, we have a circumstance in which they say, aha.

16   We thought -- we arrested you, we have problem going to do

17   all that good stuff.  And then when it comes down to going to

18   court, they don't show up.  And the dismissal by the court is

19   not just administrative dismissal.  It's a dismissal on the

20   merits.

21          And they didn't try to reopen it and say, wait a

22   second, the trooper was sick, he was out of the country,

23   something was wrong.  They didn't do that.  He just -- they

24   didn't show up.  And he had a number of occasions to show up.

25          So certainly, I think this goes to the heart of our

1   case with respect to the false arrest and the malicious

2   prosecution.  Certainly, if he arrested me or if he arrested

3   Mr. Rizzo and doesn't show up for court, we're not thinking,

4   oh, this is an administrative dismissal.  This is a dismissal

5   on the merits in a court of law.  And that's what this is.

6              So I'm a little perturbed to say the least, that

7   we're classifying this -- or at least Mr. Rizzo is

8   classifying this as an administrative action, when it clearly

9   was not.

10             THE COURT:  I understand.  And I didn't rule on

11  this.  I simply said I can't rule on it, because it hasn't

12  been delegated to me by the District Judge to make the

13  evidentiary call.

14             The final one that I wanted to ask about was on the

15  activation of -- the -- the lower court.  Is that -- I don't

16  even know if that's an issue in this case.

17             MR. RIZZO:  They've made it an issue, Judge.

18             THE COURT:  Okay.

19             MR. RIZZO:  This ties in with him not showing up in

20  court.  Their whole theory is that this is a trumped-up -- an

21  entire trumped-up incident.  They don't turn the NVR on,

22  because they don't want anybody to see what they do.  They

23  don't show up in court because they know the claims are

24  false.  And they -- they -- what they are going to try to do

25  is to show that this was some sort of grand conspiracy and

 1   that's their methodology.

 2          The reality is even if that is true that they

 3   didn't turn it on, which in this case, they did not, even if

 4   it's a violation of a policy and procedure, there's plenty of

 5   Third Circuit law that says those things do not form the

 6   basis for a constitutional finding of some kind of violation

 7   under § 1993.  There's -- the [case citation], there's

 8   Thompson, there's a whole bunch of other cases.  That's why I

 9   would want an in limine motion on this so that they can't

10   bring that type of information in.  And it's nothing but

11   prejudicial -- it's intended to turn a jury's head away from

12   the issues and put it on maybe a trooper's improprieties in

13   terms of following policies and procedures that the State

14   Police sets up in their SOPs.

15          THE COURT:  Okay.  Counsel.

16          MR. RIDLEY:  Well, Your Honor, first of all, they

17   are on the strict guidelines to make sure that the NVR is on.

18   They know where they are.  They're in Irvington.  They're in

19   Irvington for a specific purpose, and that is to help with

20   the drug problem or the gang problem in Irvington.

21          Now, the fact that they didn't turn this NVR

22   machine on when they knew on the attorney general's

23   guidelines, they have to turn it on, they have to make a

24   recording of what goes on with respect to the arrest, it's

25   certainly relevant to the issue of their credibility, and

1   it's certainly relevant to our theory of the case, which is

2   this is all trumped up, that this is a false arrest, and

3   there was a massive -- there was an attempt to cover it up --

4   in the cases that he cited are there were cases that concern

5   a whole -- a whole lot less -- less than this.  It doesn't

6   concern these issues.  It concerns -- I mean, one of the

7   cases was just a -- a traffic stop and a person didn't turn

8   the NV -- the NVR on.

9          That's not what we have here.  We have a State

10  trooper, who's not on the turnpike.  He's in the city.  And

11  he's in the city, and he can actually -- an arrest.  He has

12  an -- on at one time, and then he turned it off.  And

13  certainly, once again, maybe that's a evidentiary issue.  I'm

14  not sure it is.  I'm sure this is a factual issue that has to

15  go before the jury and the jury can consider it -- can look

16  and say, hmm, why didn't he turn off the NVR?  Why didn't

17  they show up in court?  These are all the facts that are --

18  should be presented before the jury in this type of

19  litigation.  And certainly 1983 -- this.  It doesn't bar.  It

20  covers this.  And if you allow these type of actions, if you

21  take them away from plaintiff, then you now have the State

22  troopers running carte blanche.  The reason why we got that

23  NVR in is because the troopers -- doing these things.

24  They -- we don't even have a record of when -- stops on.  We

25  never had a record.  It was always the trooper's word,

1    saying, oh, we -- and that was it.  That's the purpose of the

2    NVR.

3              THE COURT:  Oh, well, I can understand that you two

4    have a different point of view on whether such evidence is

5    relevant or 403.  Obviously, this case is not, though, to be

6    a blanket attack on the State Police generally, and I'm sure

7    there'll be metes and bounds, if this evidence is admissible,

8    as to the purpose of NVRs and whether -- whether it's --

9    whether you'd be permitted to take the wholesale argument --

10   just concerning the troopers generally.

11             The issue before this Court is whether or not that

12   was a piece of evidence you're going to seek to admit.  I now

13   know you are seeking to admit it.  Your adversary's going to

14   seek to preclude it.  And you'll get deadlines to file your

15   in limine motions.

16             The pace of this process does pick up a little bit.

17   If I could direct your attention, please, to page 14 of the

18   proposed pretrial order.  This is a section of the pretrial

19   order which lists the prospective witnesses that each side

20   intends to offer at trial.

21             I'd like each of you to please look at your

22   adversary's list to let me know whether or not you have any

23   discovery-based objections.  And what I mean by that is the

24   listing is someone not previously disclosed somehow in

25   discovery.

1              So let me know when you're ready.

2                    (Pause in proceedings)

3              MR. RIDLEY:  I reviewed it, Your Honor.  I don't

4    have any objections to --

5              THE COURT:  Okay.

6              MR. RIDLEY:  -- defendants' -- actually, a lot of

7    his witnesses are our witnesses so...  and the rest of them

8    are records that we -- that were produced from the jail.  We

9    even list them from our point, from...

10             THE COURT:  Okay.  Thank you.

11             On behalf of the defendants, do you have any

12   discovery-based objections to any of the plaintiff's

13   witnesses?

14             MR. RIZZO:  Yes, Judge, we have objections to

15   Number 3, 13, 15, 16, 17, 18, 19, and 20.  The reason for the

16   objection is this:  Those are troopers that were involved in

17   another incident that happened a year or more before the

18   incident that we're involved in, and this is another one of

19   plaintiff's attempts to graft on to this incident behavior of

20   other troopers at other times to try and form some kind of

21   conspiratorial pattern.  The troopers that I listed had

22   nothing to do with this incident whatsoever.

23             THE COURT:  Did you preserve that as an in limine

24   motion?  I just -- it's not ringing a bell.  Maybe it's

25   there.  If I could direct your attention back to, please,

1   pages 4 and 5.

2          MR. RIZZO:  I think I did not because we didn't get

3   this list until the day that he filed the pretrial order.

4   This -- this was not given to us prior to that time, these

5   names.  In fact, when we met on the 24th, there -- the

6   representation that was made to me was that their witnesses

7   were going to be our witness- -- the witnesses we identified,

8   all the people in our list.  And then these others were added

9   when they listed their exhibits, which include all of the

10  internals and arrest reports from these prior incidents

11  involving other people at other times.

12         THE COURT:  Okay.  Let me hear from your adversary

13  about the expected topics these witnesses will testify about.

14         MR. RIDLEY:  One of these test- -- these officers

15  will testify to the prior incident in which one of the

16  troopers was dis- -- who was involved in this case was also

17  disciplined prior for the same behavior.  That these officers

18  run around in a pack, I think is relevant to the issue of --

19  of custom and policy, that the State troopers overlook the

20  conduct here and either give them minimal discipline or no

21  discipline at all.

22         So their testimony is going to be limited to that.

23         And, Your Honor, with respect to their not getting

24  a list of these things, we sent this stuff out over to

25  counsel on the day -- on Friday.  And we got a response from

 1   counsel as to what was missing or what needed to be placed

 2   in -- put them in, so we held up on filing it until we got

 3   the information.  And one of the things that we didn't get

 4   from him by the time we did file it was their expert reports.

 5   So I think, you know, it's a little disingenuous to say that

 6   we didn't give them something in a timely manner, because we

 7   did give it to them, and he had the chance to review them and

 8   they're not in the motions in limine, and certainly I think

 9   they're relevant to this case.

10              THE COURT:  Okay.

11              MR. RIZZO:  Your Honor, number one, they've had our

12   expert reports for months.  We've complied with the date in

13   the court order to supply them to them, and they got it on

14   that day.  They had the expert reports that they could have

15   attached it.  So whatever he says about that is completely

16   untrue.

17              Secondly, this list was all these people on the day

18   that we were to meet, as indicated in the order, these names

19   were never provided to me at that point in time.  As I said,

20   it was represented the same witnesses we put, the same

21   troopers were going to be the same ones.  It's only when this

22   document was filed 5/27 that these names appeared at that

23   point in time.

24              THE COURT:  Okay.

25              MR. RIDLEY:  Your Honor, with respect to he's

1   saying something that's not true.  With respect to the expert

2   reports, the order said he's supposed to supply us with his

3   information.  Well -- to me to do it.  And if he had gave it

4   to me, I would have supplied it to you.  If he gave it to me

5   Monday, I will amended the pretrial order and sent it on.

6              I didn't have it.

7              So to the statement that that's not true is

8   really -- I mean, I think that's impunging a little bit upon

9   my character, because I waited till the last minute to file

10  this thing, and I filed it -- everything that he gave me is

11  what I put in.  And he then said, Mr. Ridley or Mr. Hamlin,

12  just attach the expert reports.  You know, I'm not making his

13  case for him.  He -- asking -- to make his own case, so he

14  has to tell me.  I think that's the way it goes.

15             THE COURT:  Wait -- well, I --

16             MR. RIZZO:  Maybe I mis- --

17                   (Simultaneous conversation)

18             MR. RIZZO:  Maybe I was presumptive here --

19             THE COURT:  -- the real issue is whether or not --

20  wait, wait, wait, wait, wait, wait.  Let's just talk about

21  the expert reports.  I don't think I'm hearing that the

22  expert reports weren't disclosed before May 27th.  Maybe the

23  dispute is whether a second copy was provided with the

24  materials for submission to the Court with the pretrial

25  order; right?

1            MR. RIZZO:  Right.  And I'm pleading guilty to

2     assuming the fact that because it was his responsibility to

3     put the order together, as per the Court's order, he just

4     would have taken what we had previously given to him and

5     attach it to the order.

6            THE COURT:  Well --

7            MR. RIZZO:  That -- that -- maybe I'm guilty of

8     that.  But he certainly had them for months before the order

9     was due.

10            THE COURT:  Yeah, I don't -- and that's what I

11     don't think there's a real dispute.  We have a report dated

12     February 22d, March 22d, and April 9th.  I'm not hearing they

13     weren't provided during the expert discovery period.  The

14     only issue as it relates to this is whether they were emailed

15     or -- faxed or there was a direction to include.  The Court

16     cured that probably when it asked for the copies to be

17     provided for today.

18            The issue before the Court is whether or not the

19     Court should permit the addition of the in limine motion to

20     preclude the plaintiff from calling the various troopers who

21     were just identified to testify about events other than the

22     event at issue in this case.  That's the issue in front of me

23     right now.

24            MR. RIZZO:  And, Your Honor, I would also add,

25     although I did not specifically add an in limine motion, I

 1  did object to all of the exhibits that he attached that would

 2  include each of the troopers that I'm objecting to on the

 3  same basis, that they were involved in an incident a year or

 4  more with other people at other times under different

 5  circumstances.

 6          So I mean, it isn't like I ignored it completely.

 7  I've objected to all of those, the introduction of all of

 8  those exhibits that plaintiff listed in his exhibit list.

 9          THE COURT:  Okay.  The only issue is whether we're

10  going to permit the addition of that one in limine motion,

11  which is essentially to preclude what the plaintiff would

12  characterize, presumably, as 404(b) type evidence.  And it is

13  the kind of issue that the court -- a trial judge would want

14  vetted for a few reasons, and this is why I'm going to permit

15  that -- that in limine motion to be made.  I'm not ruling on

16  whether it's admissible or not, this evidence, but why I'm

17  going to allow the in limine motion to be added.  First and

18  foremost to the extent we're talking about events other than

19  the one at issue, the Court always needs to be conscientious

20  about its 403 concerns about, here, jury confusion, undue

21  consumption of time, and the like.  The second is for the

22  Court -- another trial judge to be educated about the nature

23  of the expected testimony, so that it's going to be

24  permitted, Her Honor is prepared to offer whatever limiting

25  instructions might be necessary, both before and after it's

1   offered.  We're also talking about a total of eight witnesses

2   who have been called to testify about an event other than the

3   one at issue in a case that already has on the plaintiff's

4   list a total of 20 witnesses and on the defense list a total

5   of 18.

6           So as a matter of allowing the judge to have a

7   preview of this testimony and an ability to control this as

8   the Third Circuit precedent would require, because whether it

9   comes in with or without a motion, it's still 404(b)

10  evidence, and why I have an obligation to make sure that it's

11  useful and appropriate purpose, the Court will permit that in

12  limine motion to be added to the list.  Judge Hayden will --

13  deadlines for such motion practice, as I already indicated.

14          There is no discovery-based objection, really, that

15  I've heard as to any of the witnesses.  And therefore, we can

16  move on to the next section, which is Section 6, which is the

17  expert witness section.  I note for the record that the

18  pretrial order that was submitted to the Court includes the

19  plaintiff's, expert and today the defendants have brought the

20  Court their expert reports.

21          The one thing I just want to point out is the

22  expert reports will be scanned in as part of the kind of the

23  pretrial order, but what I am going to do is in the expert

24  report from Siegert [phonetic] & Associates, the date of

25  birth of the plaintiff is on page 1, I'm just going to black

```
 1    that out.  It's -- and I didn't see any other personal
 2    identifiers of that sort in the other reports, but I would
 3    ask if there's anything else that should be redacted in that
 4    way, consistent with -- I think it's Fed. R. Civ. P. 5.2,
 5    please let me know.
 6             MR. RIZZO:  Which report was that, Judge?
 7             THE COURT:  It's the Siegert report?
 8             MR. RIZZO:  Oh, okay.
 9             THE COURT:  The forensic --
10             MR. RIZZO:  Okay.
11             THE COURT:  -- psychology, on page 1, all I'm going
12    to do is just cross out dark -- in dark ink, that.
13             Is there anything else that that the plaintiff
14    would -- wants to bring to the Court's attention to make sure
15    that we've taken care of that?
16             MR. RIDLEY:  That's fine, Your Honor.
17             THE COURT:  Okay.
18             MR. RIDLEY:  We'll go over everything, though,
19    again --
20             THE COURT:  Okay, thank you.
21             MR. RIDLEY:  -- and make sure.
22             THE COURT:  Okay.  All right, then.
23             My next question or comment comes up at page 17.
24    This section is the section of the pretrial order that deals
25    with a desire by a party to offer as substantive evidence,
```

1   deposition testimony.  If you think you might do that -- I'm

2   not talking about impeachment.  I'm talking about actually

3   reading in as substantive evidence -- I would simply write in

4   that blank line "to be set by Judge Hayden" because she has a

5   particular format she uses.  If you don't think you're going

6   to use it, then I would write the words "none."

7              What's your pleasure?

8              MR. RIDLEY:  I usually use deposition testimony as

9   substantive evidence as far as my case in chief, so I

10  anticipate using some.

11             THE COURT:  Then all I'm going to, then, for the

12  purpose is to write the words "to be set by Judge Hayden,"

13  and Her Honor will give you guidance on that subject.

14             Okay.  The next comment that I have is on page 18.

15  It's the exhibit section.  And this segues into subjects that

16  were raised in the June 1st letter.  So let's talk about the

17  June 1st letter and then there is my other issue on this

18  section.

19             The June 1st letter says that there is a document

20  called "Certification Pursuant to Automobile Reduction Act

21  [sic] of 1999."  If I could ask the defendants, which exhibit

22  does this relate to?

23             MR. RIZZO:  It's right at the end of where they

24  have the plaintiff expert report, Section 6?

25             THE COURT:  I see.  Is it dated November 3, 2010?

1          MR. RIZZO:  That's the date on it.  But we did not

2     get that until we got a copy of the pretrial order.  We've

3     never seen this piece of paper.

4          And, in fact, if you look at it, Judge, it's

5     totally irrelevant to this issue.  It has to do with an

6     automobile accident and an automobile statute dealing with

7     the verbal threshold.

8          MR. RIDLEY:  And, Your Honor, first of all, we know

9     the expert reports don't go before the jury.  This is just a

10    form letter because this is what has to be supplied by

11    experts on automobile cases.  This company does a lot of

12    automobile accident cases as well as generalized personal

13    injury cases.  So certainly, we're not planning on using this

14    document.  This document is just something that's really

15    state-required by him under the Automobile Insurance Cost

16    Reduction Act.  Maybe he was just being more careful.

17         THE COURT:  Did he think this was an automobile

18    case?

19         MR. RIDLEY:  No, I don't think he did, but I

20    think -- you know, they just -- I've done business with this

21    company before, and I think what they do is they just attach

22    it.  It's almost like a pro forma thing with them.  I had a

23    worker's comp case, and they were on the petitioner's

24    attorney, and I laugh, because they submitted the Automobile

25    Insurance Cost Reduction Act form on the worker's comp case.

1    They don't have to by statute, but with automobile cases they

2    do.  I just think he just put that on there -- the secretary

3    attached it.  It really has no relevance in this case.  It

4    has no meaning.  Certainly we're not planning on using it.

5              THE COURT:  With that representation, is that --

6              MR. RIZZO:  Wait, Your Honor.

7              THE COURT:  -- it sounds like -- if it's not going

8    to be used, what's the problem?

9              MR. RIZZO:  The problem is it contains opinions

10   that are different than what the doctor gave at his

11   deposition, and it's at odds when I asked him at his

12   deposition, when I showed him the report, which consisted of

13   the seven pages, he told me that was the full, complete and

14   entire report.  He had no more reports, he had no

15   supplemental reports, and he had no other opinions other than

16   what was expressed in the seven pages.

17             I didn't have this page when I --

18             THE COURT:  But your adversary's not going to use

19   it.

20             MR. RIZZO:  But he's going to offer these opinions,

21   Judge, and he's going to say these are my opinions --

22                  (Simultaneous conversation)

23             THE COURT:  He's not going to -- he's can't use --

24                  (Simultaneous conversation)

25             MR. RIDLEY:  -- automobile accident --

1          THE COURT:  He's not going to offer any of the

2    opinions contained on this page.  He's not going to use it.

3          MR. RIZZO:  Nothing -- he's precluded from

4    talking -- saying anything that he says on that page during

5    this trial?

6          THE COURT:  That's what he just represented to the

7    Court.  Let me give him --

8          MR. RIDLEY:  I'm bound by the four corners of his

9    expert.

10          MR. RIZZO:  Yeah, if he makes that representation,

11    I'll accept that.  I just don't want to get sandbagged,

12    Judge, where I'm dealing with something I didn't have chance

13    to depose somebody on.

14          MR. RIDLEY:  Even it says automobile insurance --

15          MR. RIZZO:  I understand --

16                (Simultaneous conversation)

17          MR. RIDLEY:  -- you can't --

18          MR. RIZZO:  Then why did you include it in the --

19          MR. RIDLEY:  I didn't include it.  My expert

20    included it.

21          MR. RIZZO:  He didn't, because we never got it.

22          MR. RIDLEY:  Yes, he did include it --

23                (Simultaneous conversation)

24          MR. RIDLEY:  Whether you got it or not -- the fact

25    that we sent you all those names.

1          THE COURT:  All right.  First, I'd ask that when

2    we're on the record, that you don't crosstalk each other.  If

3    you have comments you want to make, you make them to the

4    Court.

5          The second is the issue's resolved.  There's a

6    representation that nothing in that document's going to be

7    used for any purpose in the case.  He's bound by the four

8    corners, so it's all good.

9          The second issue deals with the exhibit list.  Let

10   me tell you what's contemplated by the judges, and maybe this

11   will resolve the problem.  It's contemplated that each

12   exhibit will be premarked and that each of you will have

13   provided the other a copy of those documents so that when

14   we're all at trial together -- before the United States

15   District Judge, you will have the exhibits that your

16   adversary's premarked as well as will the court, so maybe

17   that resolves the problem.  And maybe that's what the

18   defendant already did or intends to do.

19         So let me ask the defendant, what -- what have you

20   guys done with respect to your exhibits?

21         MR. RIZZO:  We premarked ours Exhibit 1, you know,

22   separately and put them in separate batches when we sent them

23   to the plaintiff.

24         When I was -- on the 24th went to Mr. Ridley's

25   office, he gave me -- or he showed me the stack of documents

```
 1   they intended to use, and he gave me the exhibit list.  Then

 2   when I took them back to my office either the next day or

 3   sometime thereafter, what I noticed was there are no markings

 4   on any of the documents except for the Bates stamps that we

 5   put on, the State put on, and they're not separated by what

 6   exhibit they are, and when you read the exhibit list, which

 7   is over 200 exhibits, you can't -- it's almost impossible to

 8   determine which of the hundreds of pages of documents form

 9   the individually identified exhibits.

10           What I want is just them to separate, segregate

11   them.  Give me the ones that are Number 1, the ones that are

12   Number 2.  Tab them and separate them and give them to me in

13   that form so when he tries to use them or wants to use them,

14   I'll be able to pull out a discrete document and say, yes,

15   no, or otherwise to it.

16           THE COURT:  Okay.  Let me hear from the plaintiff.

17   Are you looking --

18           MR. RIDLEY:  No problems with, Your Honor, so long

19   as he does the same thing for me.

20           THE COURT:  Perfect.

21           MR. RIZZO:  We've already done that.

22           MR. RIDLEY:  Well, maybe --

23           MR. RIZZO:  We'll do it again, if you want me to do

24   it again.

25           MR. RIDLEY:  Then you have to do it again, because
```

 1   I haven't seen it.

 2                THE COURT:  All right.  The Court is going to

 3   require that you folks do that by June 30th, that you provide

 4   each other with premarked copies of the exhibits using the,

 5   you know, whatever exhibit markings you -- listed for the

 6   exhibit lists.

 7                The next issue I ask each of you to look at is if

 8   you could look at each other's exhibit list and let me know

 9   if you have any discovery-based objections to any of the

10   exhibits that have been listed by the adversary.

11                MR. RIZZO:  Discovery --

12                THE COURT:  Discovery that is -- was -- it's not

13   been produced during the course of discovery.

14                     (Pause in proceedings)

15                MR. RIZZO:  Well, Judge, I know that --

16                MR. RIDLEY:  One second.

17                MR. RIZZO:  All right.  I know that in -- I mean, I

18   listed the -- my objections to very, very many of them.  But

19   there's some in here --

20                THE COURT:  These are -- wait, wait -- make sure

21   you understand what I -- I've only limited --

22                MR. RIZZO:  No, no, I do understand.

23                THE COURT:  Because you have authenticity listed.

24                MR. RIZZO:  Yes.

25                THE COURT:  Is that also meaning discovery?  I

1    construed authenticity as a 901, 902 type objection.

2              MR. RIZZO:  Right.  But in terms of just discovery,

3    Judge, there are certain ones in here that I do not recognize

4    as being documents we turned over to them.  Very many of them

5    that I did object to, we turned over, so I know what it is

6    that they are, and the objection is to relevancy and other

7    things.

8              But some of these things, like from 178 on down

9    to -- where is it -- 1- -- yeah, that whole bunch in 168, I'm

10   sorry, 168 on down to I believe 186.

11             THE COURT:  So you have a question about when 168

12   through 186 were produced?

13             MR. RIZZO:  I don't know that they were ever

14   produced, because the representation that was made to me is

15   the documents they were going to use were only the documents

16   we turned over to them with our Bates-stamped number.

17             Now, these 168 through, I'd say, 180-something,

18   these are not something that I recognize.  In fact, I don't

19   know what they are at all.  I mean, Google map views, I know

20   we never had anything like that.  Maps, MV stop reviews, I

21   don't know what those are.  I mean I know what they are in

22   terms of what they identify, but these are not items that we

23   ever produced to them or that we ever received from them.

24             THE COURT:  Okay.  So let me give your adversary a

25   chance to look at Exhibits 168 to 186 and tell us when it is

 1   that information was produced in discovery.  If you know.

 2         MR. RIDLEY:  Your Honor, I don't know the dates

 3   that they were produced in discovery.  The only thing I can

 4   represent is that I believe they were.  The only thing I can

 5   do is I can go back, check my file and see when these

 6   documents were turned over to the defendant, because I just

 7   don't have the knowledge right now to even go through this.

 8   I mean some of these things -- of course, when you see a

 9   subpoena duces tecum, that might have been a subpoena for

10   records from a third party.  And certainly, we would have to

11   put him on notice in that, so if we received information, I'm

12   pretty certain that we turned it over to them.  It may not be

13   in a form he can recognize, and maybe it's something he

14   overlooked.

15         But certainly, we should have some documentation

16   that shows that we transferred that discovery over to him.

17   So at this point in time, Your Honor, the only thing I can do

18   is go back, take a look at the file, and -- and establish

19   that they were, in fact, given to the defendant.

20         THE COURT:  Okay.  Then what I'll do is I'll set

21   June 30th as the date by which the plaintiffs should provide

22   the defendant with the date on which those items, namely

23   Exhibits 168 to 186, were produced.  If they weren't produced

24   in discovery, then I guess they won't be on the list.

25         Okay.  If I could turn now over to the plaintiff,

1   looking at the defendants' list, do you have any

2   discovery-based objections?

3                MR. RIDLEY:  I don't have any discovery issues,

4   Your Honor.

5                THE COURT:  Okay.  Thank you.  All right.

6                If I could direct your attention, please, we're up

7   to Tab 9, page 28.  For the record, this section is the

8   section of legal issues that the fact finder will need to

9   decide.

10               I note that in -- on page 28, the items listed as

11  Y, Z, and "double A" on page 29 are really in limine motions,

12  and I gather they are already preserved in Section 2.  If I'm

13  correct, I'm just going to draw a line through them as long

14  as they're already preserved there, because this is -- as I

15  said, is meant to serve a slightly different purpose.

16               MR. RIDLEY:  I think they have been preserved,

17  Your Honor.  They may not be worded the same way, but I think

18  we talk about the information about the possession -- of

19  fleeing the State, the whole stuff can happen with the NVR --

20               THE COURT:  I agree.  They also -- it looked like

21  there were many applications already preserved as well, so I

22  wanted to be sure there was nothing different a party was

23  seeking to preserve.

24               Okay.  If I could direct your attention, please, to

25  page 10.  Page 10, Item C, Judge Hayden has not given me a

1   date for trial, so you can write "to be set by Judge Hayden."

2          That section tends -- deals with the pretrial

3   submissions Her Honor would look for, like jury instructions,

4   voir dire, the like.

5          Page 31, at the top of the page, you can just write

6   "not applicable."  Those would be submissions if this were a

7   bench trial.

8          Item G on page 31, as I mentioned, Her Honor did

9   not give me a pretrial -- strike that -- a trial date, so you

10  can just write "to be set by Judge Hayden."

11         Judge Hayden also sometimes schedules with counsel

12  and their clients a settlement conference and what she calls

13  a pretrial housekeeping conference.  She has not yet set that

14  date, but don't be surprised if you get a -- a date for such

15  an event with Her Honor.  Besides talking settlement,

16  sometimes, what Her Honor will discuss are in limine motions.

17  Sometimes, she'll talk about if there's practical concerns

18  that you want to bring to her attention; you have a witness

19  with special needs, you have special equipment you need to go

20  to the courtroom, things like that.  So she hasn't given me a

21  date for that, but I wanted to let you know that's something

22  Her Honor may do.

23         That is all of my comments as it relates to the

24  pretrial order.

25         Let me ask the plaintiff, is there anything else

 1   you want to raise as it relates to the pretrial order?

 2             MR. RIDLEY:  No, Your Honor.

 3             THE COURT:  Okay.  On behalf of the defendants?

 4             MR. RIZZO:  Yes, one thing, Judge, under

 5   Item Number 3.

 6             THE COURT:  Page -- what page, please?

 7             MR. RIZZO:  We're on page 6.

 8             THE COURT:  Okay.

 9             MR. RIZZO:  Stipulation of facts.

10             THE COURT:  Yes, sir.

11             MR. RIZZO:  When the pretrial order was sent to me

12   by Mr. Hamlin, before it got filed for me to look at, I, in

13   return, my email objected to Stipulated Facts A, C, F, and G.

14   Sent that back to him.  He responded to me, said, thanks,

15   I'll take care of it or words to that effect.  I don't know

16   exactly what he said.

17             But they appeared again in the order, and they

18   should not.

19             THE COURT:  So I want to preserve, of course, the

20   plaintiff's ability to prove these, even if there is no

21   stipulation.

22             Is it all right with the plaintiff, then, if -- as

23   it relates to A, C, F, and G, the Court notes that these

24   shall be deemed as part of the plaintiff's contested facts?

25             MR. RIDLEY:  Yes, Your Honor.

```
1                    THE COURT:  Okay.

2                    MR. RIZZO:  Okay.

3                    THE COURT:  Okay.

4                    MR. RIDLEY:  Which was -- that's A?

5                    MR. RIZZO:  A, C, F, and G.

6                    MR. RIDLEY:  A, C, F, and G.

7                    THE COURT:  And if I could ask counsel, I -- I know

8      that you submitted the final pretrial order in the binders.

9      Did you sign those?

10                   MR. RIDLEY:  No, I mean -- no.

11                   THE COURT:  Okay.  If I could ask the folks in the

12     jury box, if you could just give counsel, so they can at

13     least sign the last page.  I'm going to make some

14     hand-written notes on pretrial.  That'll be scanned, so that

15     you have -- resolution of disputes that we've had today in

16     the order.

17                   Okay?  So I'll give you each a chance just to sign

18     that.

19                   MR. RIDLEY:  -- Mr. Hamlin here, Your Honor.  Can I

20     sign things by --  and just circulate --

21                        (Simultaneous conversation)

22                   THE COURT:  That would be fine.  Yeah, if -- while

23     you -- if you can sign your name or and then write "for Ray

24     Hamlin," that would be great.  Okay.

25                        (Pause in proceedings)
```

 1              THE COURT:  Okay.  Thank you.

 2              Is there anything else the plaintiff would like to

 3    put on the record today?

 4              MR. RIDLEY:  No, that's it for me, Your Honor.

 5              THE COURT:  Okay.  Thanks.

 6              On behalf of the defendant?

 7              MR. RIZZO:  Nothing, Judge.

 8              THE COURT:  Okay.  We can go off the record.

 9              (Conclusion of proceedings at 12:41 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3    that the 61 pages contained herein constitute a full, true,

4    and accurate transcript from the official electronic

5    recording of the proceedings had in the above-entitled

6    matter; that research was performed on the spelling of proper

7    names and utilizing the information provided, but that in

8    many cases the spellings were educated guesses; that the

9    transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   S/ *Sara L. Kern*                        October 22, 2012

19   _____        _____
     Signature of Approved Transcriber              Date

20

21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     901 Route 23 South, Center Suite 3
23   Pompton Plains, NJ 07444
     (973) 237-6080
24

25